UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOWNE PLACE CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 1561 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Towne Place Condominium Association sued its insurance carrier, Philadelphia Indemnity Insurance Company, claiming breach of contract and violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. Doc. 1-1 at 3-6. Trial has been set for September 2019. Doc. 96. Philadelphia Indemnity moves for summary judgment, Doc. 87, and each side moves under Evidence Rule 702 to bar the other side's expert opinions, Docs. 83, 85, 91-92. Philadelphia Indemnity's summary judgment motion is granted, and the motions to bar are denied as moot.

**Background**

The following facts are set forth as favorably to Towne Place, the nonmovant, as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018).

Towne Place is a condominium association that manages eighty-nine buildings in Schaumburg, Illinois. Doc. 105 at ¶ 1; Doc. 110 at ¶ 14. Philadelphia Indemnity insured the

1

buildings from August 1, 2013 to August 1, 2014. Doc. 105 at ¶ 5. Section E(3)(a) of Towne Place's insurance policy for that policy period includes this notice provision:

> E. Loss Conditions
>
> The following conditions apply … :
>
> …
>
> (3) Duties in the Event of Loss
>
> > (a) You [Towne Place] must see that the following are done in the event of **"loss"** to Covered Property:
> >
> > …
> >
> > (2) Give us [Philadelphia Indemnity] prompt notice of the **"loss."** Include a description of the property involved.
> >
> > (3) As soon as possible, give us a description of how, when and where the **"loss"** occurred.

Doc. 110 at ¶ 12; Doc. 105-6 at 119-120.

Sometime in 2014, roofing contractor Barry Roofing inspected Towne Place's buildings and identified what it believed to be hail damage. Doc. 105 at ¶ 30. Barry Roofing and Towne Place entered into an agreement under which Towne Place would make an insurance claim for the damage, Barry Roofing would help investigate and repair the damage, and Towne Place would pay Barry Roofing out of any insurance proceeds. *Id*. at ¶¶ 29, 31-32; Doc. 88-24. On July 24, 2014, a Towne Place representative made a claim on the policy in this email to Philadelphia Indemnity:

> I am officially reporting a claim for possible hail damage to the roofs and siding (possible gutters too). The loss date is April 12, 2014. After the storm someone offered to check and found damage. We don't know if we've had damage from any other storms.

Doc. 88-4 at 2; Doc. 105 at ¶ 6.

2

Philadelphia Indemnity investigated the claim and then denied coverage on September 17, 2014, stating in a letter that Towne Place's buildings "did not sustain damage from this year's storms which produced hail in the area where Towne Place Condominium Association is located." Doc. 105 at ¶¶ 8-11; Doc. 110 at ¶ 16. Philadelphia Indemnity heard nothing from Towne Place for the next nine months. Doc. 105 at ¶ 12.

On June 11, 2015, Towne Place informed Philadelphia Indemnity that it had retained counsel in connection with the claimed hail damage of April 12, 2014. *Id*. at ¶ 13. In October 2015, after realizing that it would be difficult to prove that the April 12, 2014 storm caused the damage, Towne Place's counsel hired meteorologist Bryan Rappolt to investigate whether the damage was caused by a different hail storm during the policy period. *Id*. at ¶ 33. On November 25, 2015, Rappolt issued a report opining that hail fell on Towne Place on May 20, 2014. *Id*. at ¶ 46; Doc. 110 at ¶ 19.

On December 3, 2015, Towne Place notified Philadelphia Indemnity by letter that it was now asserting a May 20, 2014 loss date based on Rappolt's findings. Doc. 105 at ¶ 15. Philadelphia Indemnity opened a new claim, conducted a new investigation, and denied coverage on the grounds that any damage was caused not by hail, but by normal wear and tear, and that Towne Place did not give timely notice of the May 20, 2014 loss date. *Id*. at ¶¶ 17-25. When asked at her deposition why Towne Place did not provide Philadelphia Indemnity with notice of the May 20, 2014 damage date sooner, Towne Place president Debra Lucas replied, "I do not [know]. I know we had consultants working on getting the information." *Id*. at ¶ 56; Doc. 88-31 at 19.

At least eight other Philadelphia Indemnity insureds in the Chicago area have made claims on their policies relating to the May 20, 2014 hail storm. Doc. 110 at ¶ 11. The parties

make competing assertions concerning the geographic proximity of Towne Place to the other insureds' properties, but their respective assertions either are not supported by the record, *ibid*. (Philadelphia Indemnity stating that the other properties were 30-80 miles away from Towne Place and its affiliate Towne Place West, but citing to a document that does not give the other properties' addresses or affiliations), or were not properly presented in a Local Rule 56.1 statement or response, Doc. 103 at 11 (Towne Place arguing that three of the other properties were very close to Towne Place, but citing only Doc. 110 at ¶ 11, which asserts that ten claims based on the May 20, 2014 hail storm were made in the Chicago area without describing their locations or proximity to Towne Place). The court therefore disregards those assertions. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (observing that the Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1"); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court."); *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) ("[T]he district court did not abuse its discretion in disregarding the facts contained in [the non-movant's] statement of additional facts that were not supported by proper citations to the record."); *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011) (noting that it "is certainly within a district court's prerogative" to decline to consider "any facts that were not contained in the parties' Rule 56.1 statements").

**Discussion**

The operative complaint alleges that Philadelphia Indemnity breached the insurance policy by refusing to cover the alleged hail damage, and that Towne Place is entitled to damages under Section 155 of the Illinois Insurance Code due to Philadelphia Indemnity's allegedly vexatious and unreasonabe conduct in denying coverage. Doc. 1-1 at 3-6.

Before proceeding to those claims, the court addresses the question of the date(s) on which the alleged hail damage occurred. The complaint alleges that the damage occurred on at least one of two dates, April 12, 2014 and May 20, 2014. *Id*. at 4. Philadelphia Indemnity contends that the damage was *not* caused by any April 12, 2014 storm, reasoning that there is no record evidence that hail fell on or damaged Towne Place's property on that date. Doc. 89 at 9-10. Towne Place does not respond to that argument, thereby forfeiting the issue. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Keck Garrett & Assocs. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Nextel specifically requested summary judgment on the quantum meruit claim. Keck Garrett, however, did not defend that claim in its reply to Nextel's motion for summary judgment. By failing to present its argument to the district court, Keck Garrett abandoned its claim."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled in other part by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). Accordingly, Philadelphia Indemnity is entitled to summary judgment on the issue whether an April 12, 2014 storm caused the damage. Therefore, to avoid summary judgment on its contract claim, Towne Place must show that a reasonable jury

could find based on the summary judgment record that Philadelphia Indemnity was contractually obligated to cover damage caused by a May 20, 2014 hail storm.

## I. Breach of Contract Claim

Philadelphia Indemnity contends that it is entitled to summary judgment on the contract claim because Towne Place did not provide it with adequate notice of the May 20, 2014 storm date, as required by Section E(3)(a)(3) of the policy. Doc. 89 at 10-13. As no party has raised a conflict of law issue and both parties agree that Illinois law governs, Doc. 89 at 5 n.4; Doc. 103 at 9, the court will apply Illinois law. *See Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018) ("In a diversity case such as this one, where neither party raises a conflict of law issue, federal courts apply the law of the state in which they sit.").

### A. Mend-the-Hold

Towne Place argues at the threshold that the mend-the-hold doctrine precludes Philadelphia Indemnity from pressing a notice defense in this suit because, in the parties' pre-suit communications, Philadelphia Indemnity denied coverage on the ground that Towne Place's property did not sustain covered hail damage, not on the ground that Towne Place provided it with inadequate notice. Doc. 103 at 7. That argument rests on an incorrect factual premise, as among Philadelphia Indemnity's grounds for denying coverage was that Towne Place did not give timely notice of the alleged May 20, 2014 hail storm damage. Doc. 105 at ¶ 25. Even putting that aside, Towne Place's argument fails as a legal matter as well.

As the Seventh Circuit has made clear, the mend-the-hold doctrine "does not prohibit the addition of a defense after suit is filed or otherwise limit a defendant to defenses announced before a suit is filed." *On-Site Screening, Inc. v. United States*, 687 F.3d 896, 899 n.2 (7th Cir. 2012); *see also Estate of Burford v. Accounting Practice Sales, Inc.*, 851 F.3d 641, 644 (7th Cir.

2017) (similar); *Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 614 (7th Cir. 2012) (holding that, "in Illinois, mend the hold does not forbid the defendant to add a defense after being sued; that is, it does not confine him to the defense (or defenses) that he announced *before* the suit," explaining that to "require a potential defendant to commit irrevocably to defenses before he is sued would be unreasonable to the point of absurdity"). Rather, mend-the-hold stands for the more limited proposition that "a defendant in contract litigation [may not] chang[e] its defenses midstream"—meaning during the litigation itself—"without any reason for doing so." *Amerisure Ins. Co. v. Nat'l Surety Corp.*, 695 F.3d 632, 636 (7th Cir. 2012) (quoting *Ryerson*, 676 F.3d at 614) (internal quotation marks omitted). Recent Illinois cases are in accord. *See 1002 E. 87th St. LLC v. Midway Broad. Corp.*, 107 N.E.3d 868, 873 (Ill. App. 2018) (observing that mend-the-hold "typically applies in contract cases to prevent a party from trying to evade performance of contractual duties for one reason and then, in the middle of litigation, switching to another reason"); *Israel v. Nat'l Canada Corp.*, 658 N.E.2d 1184, 1191 (Ill. App. 1995) (noting that mend-the-hold "requires a defendant in a breach of contract claim to stand by the first defense raised *after the litigation has begun*" and that "the law does not require that the defense be asserted at the time the contract is terminated") (emphasis added); Robert H. Sitkoff, Comment, *"Mend the Hold" and* Erie*: Why an Obscure Contracts Doctrine Should Control in Federal Diversity Cases*, 65 U. Chi. L. Rev. 1059, 1059 (1998) ("Under the Illinois (minority) version of the rule, absent a good faith justification for a change in position, a defendant in a breach of contract action is confined to the first defense raised *once the litigation is underway*.") (emphasis added).

True enough, some Appellate Court of Illinois decisions have held that mend-the-hold limits the insurer's defenses to its original reasons for denying coverage. *See FHP Tectonics*

*Corp. v. Am. Home Assur. Co.*, 57 N.E.3d 575, 587 (Ill. App. 2016); *United Farm Family Mut. Ins. Co. v. Frye*, 887 N.E.2d 783, 790 (Ill. App. 2008). But the Seventh Circuit in *Ryerson*, an insurance coverage case, staked out the contrary view, holding that "as understood in Illinois, mend the hold does not … confine [the defendant] to the defense (or defenses) that he announced *before* the suit," and opining that the effect of the opposite rule "would be that insurance companies would refuse to offer any explanation for denying coverage until the insured sued." 676 F.3d at 614. This court is bound to follow *Ryerson* despite its tension with *FHP Tectonics* and *American Home Assurance*. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (holding that "district judges must follow the decisions of [the Seventh Circuit] whether or not they agree" with its view of Illinois law and regardless of contrary state appellate court decisions). In any event, as shown above, Philadelphia Indemnity raised the notice issue in denying Towne Place's claim based on the May 20, 2014 storm date, which defeats Towne Place's mend-the-hold argument even as *FHP Tectonics* and *American Home Assurance* understand the doctrine.

B. **Reasonable Notice**

Towne Place next argues that Philadelphia Indemnity's notice defense fails on the merits. Doc. 103 at 7-12. Under Illinois law, "breach of a notice requirement absolves the insurance company of any obligation to defend or indemnify the insured." *State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017); *see also W. Am. Ins. Co. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 293 (Ill. 2010) (same). If no material facts are in dispute, whether a plaintiff satisfied a notice provision is a question of law that may be resolved on summary judgment. *See State Auto*, 877 F.3d at 357 (resolving a notice issue on summary judgment); *Cas. Indem. Exch. v. Vill. of Crete*, 731 F.2d 457, 458 (7th Cir. 1984) ("[I]f there are

8

no disputed material facts, the court may in appropriate circumstances decide the issue of reasonable notice as a matter of law.").

The parties agree that the Section E(3)(a)(3) notice provision requires the insured, "[a]s soon as possible," to give the insurer "a description of … when" the damage occurred, Doc. 110 at ¶ 12, but they disagree about the date on which Towne Place provided a compliant description. Philadelphia Indemnity contends that Towne Place did not give notice of "when" the damage occurred until December 3, 2015, when it first asserted the May 20, 2014 loss date. Doc. 89 at 2. Towne Place responds that Section E(3)(a)(3) did not require it to give an exact date for the loss, and therefore that its July 24, 2014 email—which stated that "[t]he loss date is April 12, 2014" *and* that "[w]e don't know if we've had damage from any other storms," Doc. 88-4—was sufficient. Doc. 103 at 8-9.

"The basic rules of contract interpretation under Illinois law are well settled. In construing a contract, the primary objective is to give effect to the intention of the parties." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 689-90 (7th Cir. 2017). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id*. at 690 (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher*, 874 N.E.2d at 58. Illinois courts strive to "adopt[] an understanding of the [contract] language that is natural and reasonable." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014).

Applying those principles, Towne Place's July 24, 2014 email did not satisfy the policy's notice requirement. Read most charitably to Towne Place, the July 24 email set forth two

9

possible loss dates: April 12, 2014, and any day prior to July 24, 2014 on which a storm occurred. Neither suffices. Towne Place's statement that the "[t]he loss date is April 12, 2014" obviously did not give notice that the hail damage occurred on May 20, 2014. And Towne Place's adding that "[w]e don't know if we've had damage from any other storms" says nothing more than the damage *might* have resulted from some *other* unspecified storms on some *other* unspecified date, and thus likewise gives insufficient notice—actually, no notice—that the damage occurred on May 20, 2014.

The purpose of a notice provision is to "afford[ ] the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." *State Auto*, 877 F.3d at 357. The provision here, which required Towne Place to give notice of "when" the hail damage occurred, was designed to allow Philadelphia Indemnity to determine whether the loss took place during policy period and to investigate the factual basis for the claim. Towne Place's sweeping statement in its July 24, 2014 email that "any other storm" could have caused the damage would have been of little use in focusing Philadelphia Indemnity's investigation or helping it to determine whether the damage occurred in the policy period. Accordingly, Towne Place did not provide a description of *when* the damage occurred until its December 3, 2015 claim identified the alleged May 20, 2014 loss date.

The next step in the analysis is to determine whether the December 3, 2015 notice— which came more than eighteen months after the alleged May 20, 2014 loss date—satisfied the policy's notice provision. Notice provisions like the "[a]s soon as possible" provision here require the insured to give notice "within a reasonable time depend[ing] on the facts and circumstances of each case." *W. Am. Ins.*, 939 N.E.2d at 293 ("as soon as practicable" clause) (internal quotation marks omitted); *see also Sonoco Bldgs., Inc. v. Am. Home Assur. Co.*, 877

10

F.2d 1350, 1356 (7th Cir. 1989) (same, for an "as soon as practical" clause); *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006) (same, for an "as soon as practicable" clause). "The Illinois Supreme Court considers five factors in assessing the reasonableness of a delay in giving notice: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available [or, in this case, when the loss occurred]; and (5) prejudice to the insurer." *State Auto*, 877 F.3d at 358 (internal quotation marks omitted); *see also W. Am. Ins.*, 939 N.E.2d at 293-94 (same).

Starting with the first factor, the policy language "does not aid in [the] reasonableness analysis because it does not identify a specific time frame for giving notice." *W. Am. Ins.*, 939 N.E.2d at 294. Accordingly, that factor is neutral.

The second factor, sophistication in commerce and insurance matters, weighs strongly against reasonableness. Towne Place is a corporation that manages a large property and that had access to and consulted with multiple experts (Barry Roofing, Rappolt, and counsel) at various points in the claim process. Doc. 105 at ¶¶ 1, 13, 29-33. Towne Place nonetheless maintains that it is unsophisticated because it did not have specific expertise in insurance matters. It also contends that its non-party experts' sophistication should not be attributed to it, and that, if anything, the fact that it "hired consultants [and] relied on those who [were] more knowledgeable regarding hail damage" shows that it was not sophisticated. Doc. 103 at 2, 12. Those arguments fail.

Illinois law generally understands insurance-related sophistication to sweep beyond those in the insurance business and to encompass companies and individuals with significant

11

experience in managing their own insurance policies. *See State Auto*, 877 F.3d at 359 (holding that an insured was sophisticated, in part, because he was a business owner who purchased and managed insurance policies); *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1171 (7th Cir. 1998) (holding that an insured was sophisticated where he "had contracted with a number of insurance companies in the past [and] held a number of different disability policies") (punctuation omitted); *AMCO Ins. Co. v. Erie Ins. Exch.*, 49 N.E.3d 900, 909-10 (Ill. App. 2016) (holding that a general contractor was sophisticated based on its experience submitting insurance claims); *MHM Servs., Inc. v. Assurance Co. of Am.*, 975 N.E.2d 1139, 1159 (Ill. App. 2012) (similar); *First Chi. Ins. Co. v. Molda*, 948 N.E.2d 206, 217 (Ill. App. 2011) (similar). And as a condominium association that managed almost ninety buildings, Towne Place can be presumed to have dealt extensively with homeowners' insurance and thus to have had at least some degree of sophistication in insurance matters. *See W. Am. Ins.*, 939 N.E.2d at 294 ("Yorkville is a bank presumed to be sophisticated in the areas of commerce and insurance."); *Ingalls Mem'l Hosp. v. Exec. Risk Indem., Inc.*, 2011 WL 10069004, at *8 (Ill. App. June 30, 2011) (presuming that a hospital is sophisticated). Evidence that an insured is aware of her notice obligations also tends to show insurance-related sophistication. *See AMCO*, 49 N.E.3d at 909. Here, Towne Place's July 24, 2014 email, which was expressly intended to give notice of the claim and the loss date, demonstrates its awareness of the policy's notice requirements. Doc. 105 at ¶ 6.

The expertise of an insured's third-party advisors further bolsters the insured's sophstication. Access to counsel in particular is a hallmark of sophistication, *see River*, 160 F.3d at 1171 (holding that an insured was sophisticated, in part, because he "sought professional assistance from his attorney"); *Country Mut.*, 856 N.E.2d at 347 (similar); *MHM Servs.*, 975 N.E.2d at 1159 (holding that a party was sophisticated, in part, because it had access to several

lawyers, including "retained coverage counsel"); *Ingalls Mem'l Hosp.*, 2011 WL 10069004, at *8 (similar); *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 923 (Ill. App. 2000) (similar), and Towne Place has not suggested any principled basis for distinguishing lawyers from other kinds of experts, *see Berglind v. Paintball Bus. Ass'n*, 930 N.E.2d 1036, 1046 (Ill. App. 2010) (considering whether the insured "had outside counsel *or other assistance with his insurance matters* that would supplement his personal lack of insurance experience and qualify him as a sophisticated insured") (emphasis added); *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. TIG Ins. Co.*, 881 N.E.2d 957, 961 (Ill. App. 2007) (holding that an insured was sophisticated, in part, because it hired a consulting firm and "sought the advice of experts in the field" before giving notice to the insurer). Granted, neither Barry Roofing nor Rappolt had insurance-specific expertise, Doc. 103 at 12, but their skills in evaluating roof damage and weather conditions, respectively, enhanced Towne Place's investigative capabilities and therefore should have enabled it to provide notice more quickly.

The third factor, the insured's awareness of an event that may trigger insurance coverage, also weighs strongly against reasonableness. Towne Place knew at least by July 24, 2014, when it made a claim on the policy, that a hail storm had caused damage, Doc. 105 at ¶ 6, so lack of awareness can explain at most only two months of the eighteen-plus month delay between the May 20, 2014 hail storm and the December 3, 2015 notice of the May 20, 2014 loss date.

The fourth factor, the insured's diligence, likewise weighs strongly against reasonableness. Towne Place's diligence argument comprises a single, conclusory sentence: "Towne Place acted diligently once it learned of the potential hail damage by conducting its investigation promptly." Doc. 103 at 2. That undeveloped argument is forfeited. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir.

2017) ("Perfunctory and undeveloped arguments are waived … ."); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped.").

Even setting aside forfeiture, the record conclusively shows that Towne Place was not diligent in meeting its notice obligations. Insureds are not diligent when, without justification or excuse, they delay in undertaking an investigation necessary to comply with a notice provision. *See Williams v. BNSF Ry. Co.*, 29 N.E.3d 1097, 1106 (Ill. App. 2015) (holding that awareness of facts that "would have prompted a reasonable person to … investigate further" cuts against diligence); *N. Ins. Co. of N.Y. v. City of Chicago*, 759 N.E.2d 144, 150 (Ill. App. 2001) ("The failure to further investigate beyond whatever routine search the City conducted, if any, when it received the summons is a fault that lies with the City."); *Ankus v. Gov't Emps. Ins. Co.*, 674 N.E.2d 865, 870 (Ill. App. 1996) (holding that an insured was not diligent when she had reason to believe that further investigation was needed but failed to investigate); *Int'l Harvester Co. v. Cont'l Cas. Co.*, 179 N.E.2d 833, 835 (Ill. App. 1962) ("To operate as an effective excuse for delay … lack of knowledge must be without negligence or fault on the part of the person seeking to be excused."). The policy here put the onus on Towne Place to determine "how, when and where the **'loss'** occurred," an obligation that required it to undertake some investigation. Doc. 110 at ¶ 12; *see also* Doc. 103 at 2 (conceding that "the Policy required Towne Place to investigate the damage before reporting"). Towne Place's July 24, 2014 email reveals that it investigated enough in the weeks after the storm to determine that the roof was damaged and that the April 12, 2014 storm might have been the cause. Doc. 105 at ¶ 6. The same email expressly acknowledged that the damage could have been caused by "other storms." *Ibid*. Yet Towne

14

Place did not confirm or disconfirm the April 12, 2014 storm date for more than sixteen months after that.

Towne Place might have argued (though it does not) that it was reasonable to wait for Philadelphia Indemnity to accept or deny its claim before taking additional action, which would account for the delay between its July 24, 2014 claim and Philadelphia Indemnity's September 17, 2014 denial. Doc. 105 at ¶¶ 6-11. But Towne Place continued to delay for long after September 17, 2014. Towne Place adduces no evidence that it took any steps to pursue the claim during the nine months between the September 2014 denial and June 2015, when it hired counsel. *Id*. at ¶¶ 12-13. Nor does Towne Place assert that it or its attorney performed any investigation that would have helped it provide the required notice that the damage occurred on May 20, 2014 until four months after that, in October 2015, when it retained Rappolt to look into alternative storm dates upon realizing that it would be hard to prove that the April 12, 2014 storm caused the damage. *Id*. at ¶ 33. When Towne Place *finally* reinitiated its investigation, it took only one or two months to develop a claim based on the May 20, 2014 storm date—a small fraction of the total period of delay. *Id*. at ¶ 15. Towne Place's president could not explain the delay during her deposition, except to state vaguely that "consultants" were working on getting the information. *Id*. at ¶ 56. On these facts, no reasonable jury could find that Towne Place was diligent in meeting its notice obligations.

The fifth factor, prejudice, weighs in Towne Place's favor. As Philadelphia Indemnity implicitly concedes, Doc. 89 at 12, there is no evidence in the record that it suffered any prejudice from Towne Place's delay.

Thus, of the five reasonableness factors, one is neutral, three weigh against reasonableness, and one weighs in favor of reasonableness. On balance, Towne Place's delay in

giving Philadelphia Indemnity notice of when the damage occurred was not reasonable. The delay's length—over eighteen months after the alleged May 20, 2014 storm date; over sixteen months after Towne Place's July 24, 2014 claim, which conclusively demonstrated that Towne Place was aware that a hail storm caused the damage; and over fourteen months after Philadelphia Indemnity investigated and denied the claim in September 2014—is significant. *See River*, 160 F.3d at 1171 (7th Cir. 1998) (holding that the plaintiff's "one year delay [was] … not reasonable"); *Farmers Auto.*, 967 N.E.2d at 335 (same, for an eleven-month delay); *Hartford Cas. Ins. Co. v. Snyders*, 506 N.E.2d 627, 629 (Ill. App. 1987) (same, for seven- to thirteen-month delay). And although even "a lengthy delay in providing notice is not an absolute bar to coverage provided the insured's reason for the delay is justifiable under the circumstances," *W. Am. Ins.*, 939 N.E.2d at 294, Towne Place "breached [the] mandatory notice provision without a reasonable excuse," *State Auto*, 877 F.3d at 362, failing even to attempt to explain why, despite its ample resources and business savvy, it waited well over a year after Philadelphia Indemnity's initial September 2014 denial to undertake the requisite investigation.

This result holds even though Philadelphia Indemnity has not shown that the delay caused prejudice. As the Seventh Circuit has explained, "an insurer need not prove that it was prejudiced in order to insist upon compliance with a notice requirement." *Id*. at 361 n.3 (citing *W. Am. Ins.*, 939 N.E.2d at 346); *see also Sonoco Bldgs.*, 877 F.2d at 1356 ("Illinois courts will consider whether the insurer was prejudiced but will not permit a lack of prejudice to compensate for inexcusable delay."); *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 796 (7th Cir. 2001) ("[A]n insurer need not prove that it was prejudiced in order to deny coverage."); *Country Mut.*, 856 N.E.2d at 346 ("We … hold that once it is determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the

16

policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer."). To the contrary, as the Seventh Circuit observed in *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), an insurer can prevail on a late notice defense without showing prejudice if "the delay is extreme, as in *Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 729 N.E.2d 457 (Ill. App. 2000) (17 months), and *General Casualty Co. v. Juhl*, 669 N.E.2d 1211, 1214-15 (Ill. App. 1996) (13 months)." *Id.* at 1074; *see also Cas. Indem. Exch.*, 731 F.2d at 459 (holding that an 18-month delay was unreasonable even if the insurer was not prejudiced); *IMC Glob. v. Cont'l Ins. Co.*, 883 N.E.2d 68, 79 (Ill. App. 2007) (same, for 13-month delay regarding one claim and 6-month delay regarding another); *Montgomery Ward & Co. v. Home Ins. Co.*, 753 N.E.2d 999, 1005 (Ill. App. 2001) (same, for delay of 8 months to a year); *Hartford Cas. Ins.*, 506 N.E.2d at 629 (same, for 13-month delay); *Charter Oak Fire Ins. Co. v. Snyder*, 317 N.E.2d 307, 311 (Ill. App. 1974) (same, for delay of 4 months after the insured realized that coverage might be available). The delay here is comparable in length to the delays in *Northbrook* and *General Casualty*, which the Seventh Circuit approvingly cited in *Taco Bell*, and in the other above-cited cases where comparable delays were held unreasonable without a showing of prejudice. Thus, Philadelphia Indemnity's notice defense prevails even though it suffered no prejudice.

The Seventh Circuit has recognized that an insurer's actual knowledge of the matter of which the insured was required to provide notice can substitute for notice from the insured, even when the insured's delay in providing notice is lengthy and unjustified. *See Kmart Corp. v. Footstar, Inc.*, 777 F.3d 923, 933 (7th Cir. 2015) (citing *W. Am. Ins.*, 939 N.E.2d at 296). Picking up that thread, Towne Place contends that two pieces of evidence show that Philadelphia Indemnity had actual knowledge that the alleged hail damage occurred on May 20, 2014. First,

Towne Place interprets Philadelphia Indemnity's September 2014 denial letter, which stated that Towne Place's property "did not sustain damage from *this year's* storms," to mean that Philadelphia Indemnity "was aware of, considered, and inspected the property for damage by any … storms" that occurred in 2014. Doc. 103 at 11. But the phrase "this year's storms" is an exceedingly slender reed on which to rest an inference that Philadelphia Indemnity took it upon itself to conduct a full investigation of every hail storm that occurred in 2014 to determine if any of them resulted in hail reaching the ground in the vicinity of Towne Place and causing the damage, this despite the fact that Towne Place identified a specific storm date (April 12, 2014) in its July 24, 2014 claim. As there is no evidence to support that most unlikely understanding of Philadelphia Indemnity's letter, no reasonable jury would credit it.

Second, Towne Place points to evidence that Philadelphia Indemnity and its adjusting firm investigated at least eight other claims from the Chicago area arising out of the May 20, 2014 hail storm. Doc. 103 at 11-12. But that evidence at most demonstrates that Philadelphia Indemnity had actual knowledge that there was a hail storm in the Chicago area on May 20, 2014. It does not show that Philadelphia Indemnity had actual knowledge of the particular matter of which Towne Place was required to provide notice: that the hail storm affected the vicinity of Towne Place and damaged its property. *Cf. W. Am. Ins.*, 939 N.E.2d at 296 ("In order to have actual notice [in the context of a liability policy], the insurer must know both that a cause of action has been filed *and that the complaint falls within or potentially within the scope of the coverage of one of its policies*.") (emphasis added) (brackets omitted). It is especially unlikely here that Philadelphia Indemnity inferred from the other claims that the damage to Towne Place's property occurred on May 20, 2014, because Towne Place's July 24, 2014 claim expressly attributed the damage to a different storm on a different date. Thus, no reasonable jury

18

could find solely from the fact that other insureds in the geographically expansive Chicago area made claims stemming from a May 20, 2014 hail storm that Philadelphia Indemnity had actual knowledge that the alleged hail damage to Towne Place's property occurred on that date.

Given all this, Philadelphia Indemnity is entitled to summary judgment on its late notice defense, and therefore on Towne Place's contract claim.

## II. Section 155 Claim

Philadelphia Indemnity also moves for summary judgment on Towne Place's claim under Section 155 of the Illinois Insurance Code, arguing that "an insurer is not liable under Section 155 where no benefits are owed," and thus that the Section 155 claim falls with the contract claim. Doc. 89 at 13 (citing *Martin v. Ill. Farmers Ins.*, 742 N.E.2d 848, 857-58 (Ill. App. 2000)). Towne Place does not respond to that argument, thereby forfeiting the claim. *See Nichols*, 755 F.3d at 600; *Keck Garrett*, 517 F.3d at 487; *Witte*, 434 F.3d at 1038. In any event, because Philadelphia Indemnity did not violate its obligations under the policy, it cannot be held liable for engaging in bad faith or improper practices under Section 155. *See Rhone v. First Am. Title Ins. Co.*, 928 N.E.2d 1185, 1196 (Ill. App. 2010) ("Where the policy is not triggered, there can be no finding that the insurer acted vexatiously and unreasonably in denying the claim."); *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 968 (Ill. App. 2001) ("The fact that we have found that Westchester's filing of its federal declaratory action comported with Illinois law and have reversed the trial court's judgment entered to Heileman conclusively shows that Westchester's actions in denying coverage were not vexatious and unreasonable."); *AU Elecs., Inc. v. Harleysville Grp., Inc.*, 82 F. Supp. 3d 805, 816 (N.D. Ill. 2015) (same).

## Conclusion

Philadelphia Indemnity's summary judgment motion is granted. Because the parties' experts played no role in the court's decision and because there will be no trial, the parties' motions to bar expert opinions are denied as moot. Judgment will be entered in favor of Philadelphia Indemnity and against Towne Place.

July 22, 2019

_____
United States District Judge